IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAY JONES                                                                    PLAINTIFF

v.                                        Civil No. 6:18-CV-06064

JOSEPH GENTLE (ADC Correctional                          DEFENDANTS
Officer, FAUST (Warden ADC Ouachita
River Unit). WENDY KELLY (ADC
Director), RAYMOND NAYLOR (ADC
Disciplinary Hearing Officer), DANIEL W.
GOLDEN (ADC Hearing Officer), DOE[1]
(ADC Ouachita River Unit Sergeant)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983.  Pursuant to

the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief

United States District Judge, referred this case to the undersigned for the purpose of making a

Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 51).

Also, before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 62).  Both Motions

are addressed herein.

### I.  BACKGROUND

Plaintiff filed his Complaint on March 29, 2018, in the Eastern District of Arkansas.  (ECF

No. 2).  His Complaint was screened and served in the Eastern District.  (ECF No. 8).  On July 11,

2018, his Complaint was transferred to this District.  (ECF No. 14).

---

[1] It is Plaintiff's responsibility to provide the Court with the identity of and an address for proper service on
Defendants.  *Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993).  The deadline to identify any Doe Defendants
was October 17, 2018.

Plaintiff alleges that on January 9, 2018, Defendant Gentle violated his Fourteenth Amendment due process rights by falsifying a behavior report and disciplinary charge in retaliation for Plaintiff's request for a grievance form. (ECF No. 2 at 5). Plaintiff then appeared before Defendant Golden for a disciplinary charge hearing on January 19, 2018. Plaintiff alleges Defendant Golden violated his due process rights by refusing to review camera footage which showed Defendant Gentle's fabrication and by ignoring Corporal Butler's witness statement in his behalf. He alleges Defendant Golden found him guilty based on "no evidence." (*Id*.). Plaintiff alleges his appeals were denied by Defendants Faust, Naylor, and Kelley, who also declined to review the camera footage or the witness statement by Corporal Butler. (*Id*. at 5-7).

Plaintiff also alleges that, as a result of the disciplinary charge conviction, he was placed in punitive segregation, where his Eighth Amendment rights were violated by the conditions of confinement. Specifically, Plaintiff alleges: (1) 24-hour isolation (2) constant cell illumination; (3) mat extraction for "obtuse hours;" (4) loss of the ability to shower; and (5) constant excessive noise ("banging on walls, vents or yelling and screaming for hours throughout the night"). (*Id*. at 7). Plaintiff alleges that the combination of these "liberty infringements" caused him to suffer sleep deprivation, anxiety, loss of appetite, hallucination, emotional disconnection, headaches, eye pain, and back and knee pain. (*Id*.).

Plaintiff proceeds against all Defendants in both their official and personal capacity. (*Id*. at 2). He seeks compensatory relief, punitive relief from Defendant Gentle, injunctive relief concerning the excessive noise and constant illumination in the punitive isolation area, court costs and legal fees, and expungement of his disciplinary conviction. (*Id*. at 9).

On July 17, 2018, Defendants Faust, Golden, Kelley, and Naylor filed their Answer. (ECF No. 18). Plaintiff was directed to provide additional information to serve Defendant Gentle. (ECF

No. 21).  On September 19, 2018, the Court received the last-known address for Defendant Gentle from the Eastern District of Arkansas, and service was ordered using that address.  (ECF No. 32, 33).  Defendant Gentle filed his Answer on October 8, 2018.  (ECF No. 39).

Defendant filed their Summary Judgment Motion on December 17, 2018.  (ECF No. 51).  On December 18, 2018, the Court entered an Order directing Plaintiff to file his Response to the Motion.  (ECF No. 54).  Plaintiff did so on January 7, 2018.  (ECF No. 59).

Plaintiff then filed a Motion for Summary Judgment on May 2, 2019.  (ECF No. 62).  Defendants filed a Response in Opposition to Plaintiff's Motion on May 16, 2019.  (ECF No. 64, 65).  Plaintiff Replied to their Response on May 22, 2019.  (ECF No. 66).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is

3

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*

*v. Harris*, 550 U.S. 372, 380 (2007).

## III.  ANALYSIS

The Court will first address Plaintiff's Motion for Summary Judgment, filed on May 2,

2019.  (ECF No. 62).  Defendants filed a Response in Opposition to Plaintiff's Motion on May 16,

2019.  (ECF No. 64, 65).  The Initial Scheduling Order for this case set the dispositive motion

deadline for December 17, 2018.  (ECF No. 23; 64 at 1).  Plaintiff's Motion for Summary Judgment

(ECF No. 62) was filed over four months past the deadline for dispositive motions.  The Plaintiff's

Motion for Summary Judgment (ECF No. 62) should be DENIED as untimely filed.

For their Motion for Summary Judgment, Defendants argue: (1) Plaintiff's claims for

monetary and injunctive relief are barred by sovereign immunity: (2) Plaintiff did not exhaust his

Eighth Amendment conditions of confinement claims prior to filing this lawsuit; (3) Defendants

are protected from Plaintiff's personal capacity claims by qualified immunity because Defendant

did not violate his due process rights and Plaintiff failed to state an Eighth Amendment claim

against them.  (ECF No. 52.)

Plaintiff disputes several facts relied upon by Defendants.  (ECF No. 59).  Most notably,

Plaintiff argues: (1) he plead not guilty to all four of the disciplinary charges at his disciplinary

hearing; and (2) he exhausted his administrative remedies concerning his Eighth Amendment

claims, even though he received no response at each level.  (ECF No. 59 at SOF 28); 59 at SOF

116-117).

### A.  Official Capacity Claims

Plaintiff seeks monetary damages against Defendants for his claims.  "Claims against

individuals in their official capacities are equivalent to claims against the entity for which they

4

work." *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir.1998).   The Defendants in this case are all employees of the ADC.   Thus, Plaintiff's official capacity claims against the Defendants is a claim against the ADC. *Id.*   The ADC is a state agency.   *See Fegans v. Norris,* 351 Ark. 200, 206, 89 S.W.3d 919 (2002). States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose,* 496 U.S. 356 (1990)*; Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).   "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri,* 973 F.2d 599, 599 -600 (8th Cir. 1992) *(citing Papasan v. Allain,* 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (*citing Quern v. Jordan,* 440 U.S. 332, 342 (1979)).

The Defendants in this case are all employees of the State of Arkansas.   As such, the official capacity claims against them for monetary damages are barred by sovereign immunity.   Plaintiff's claim for prospective injunctive relief as to the alleged noise and constant illumination in punitive isolation, however, is not barred.   *See Monroe v. Arkansas State University,* 495 F.3d 591, 594 (8th Cir. 2007) (Under the exception set forth in *Ex Parte Young,* 209 U.S. 123 (1908), " state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment.").   As discussed below, however, there were no violations of Plaintiff's constitutional rights and thus no need for prospective injunctive relief.

Defendants are therefore entitled to summary judgment as a matter of law as to Plaintiff's official capacity claims.

### B. Disciplinary Charge – First Amendment Retaliation

"[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008).   As long as there is "some evidence" the inmate actually committed a rule violation, then a retaliation

claim will fail. *Id*; *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield*, 511 F.3d at 831; *Onstad v. Hobbs*, 607 Fed. App'x 595, 596 (8th Cir. 2015).

There is "some evidence" that Plaintiff was guilty of at least one of the disciplinary charges, and his retaliation claim must therefore fail as a matter of law. Defendants provided copies of Plaintiff's disciplinary charge documents. (ECF No. 51-2). The text of Defendant Gentle's report describes the incident as follows:

> On 1-9-18 at approx. 9:00pm I COI Gentle was working Zone 3 barracks 10 when I entered the hub to review my count sheet, Inmate Jones, Jay (B/Male, N/A) #157758 attempted to enter the hub. I gave Inmate Jones a direct order to step away from 10 barracks door and he refused. I then gave Inmate Jones two more direct orders to step away from the door and he still wouldn't comply. He began yelling at me stating "I'll kick your ass, and suck my dick bitch." Due to the above stated facts I COI Gentle charge Inmate Jones with rule violations 12-3, 3-5, 11-1, 5-3.

(ECF No. 51-2 at 1). Code 12-3 is Failure to Obey and Order of the staff, 3-5 is Out of Place Assignment, Code 11-1 is Insolence to a Staff Member, and Code 5-3 is Assault – verbal or written threat. According to the disciplinary documents, Plaintiff plead guilty to Code 11-1, Insolence to a staff member, and was found guilty on all four counts after a disciplinary hearing in front of Defendant Golden. (ECF No. 51-2 at 2). As a result of the disciplinary conviction, Plaintiff was sentenced to twenty days in punitive isolation, he received a reduction in his class status, his privileges were restricted for sixty days, and he lost 212 days of good time credit. (ECF No. 51-9).

Corporal Butler submitted an incident report Form 005 on January 10, 2018. She stated as follows:

> On 1-9-18 at approx. 9:00pm I Cpl. Butler had just finished counting Barracks 11 when I stepped into the hub, I overhead Inmate Jones arguing with COI Gentle. I heard Inmate Jones tell COI Gentle to "Suck his dick bitch and that he was going to beat his ass." Inmate Jones finally walked away from the door.

(ECF No. 51-2 at 7). Corporal Campbell is the Corporal/Disciplinary Review Officer at the ADC Ouachita River Unit. Both Plaintiff and Defendant Gentle recall that Corporal Butler was present during the incident. (ECF No. 53 at SOF 18; 59 at SOF 18). According to Corporal Campbell, however, when she contacted Butler on January 18, 2018, and informed her that Plaintiff had requested a witness statement from her for his disciplinary hearing, Butler told her she had no knowledge of the incident. (ECF No. 51-2 at 8; ECF No. 51-13).

In his Response to the Summary Judgment Motion, Plaintiff argues he plead not guilty to all four charges. (ECF No. 59 at SOF 28). According to Defendant Golden's affidavit, his recording device malfunctioned the day of the hearing, so a recording of the hearing is not available for review. (ECF No. 51-8 at 2). In Plaintiff's Major Disciplinary Appeal form, which he signed the same day as his hearing, Plaintiff did not contest that he plead guilty to the charge of insolence to a staff member. He did state that Gentle said "Fuck you Jay Jones" at which point Plaintiff told him "Fuck you too" and then went to bed. (ECF No. 51-2 at 10). Plaintiff also testified in his deposition that he plead not guilty to all four charges. (ECF No. 51-1 at 19). Plaintiff, however, also testified that he "cussed" or "cursed" Defendant Gentle on the day of the incident because Gentle cussed Plaintiff out first. (ECF No. 51-1 at 11, 13, 28). Plaintiff also testified that he told Defendant Faust this when he met with her, and she noted that both Plaintiff and Gentle should know better. (ECF No. 51-1 at 28). Defendant Faust provided an affidavit which stated she spoke with Plaintiff about his behavior, and Plaintiff admitted he cursed Defendant Gentle. (ECF No. 51-10). Further, in Grievance OR-18-00120 regarding the incident, Plaintiff stated that Gentle

"started cussing me out, so I cussed him back." He further stated in the Grievance that when asked about the incident "I admitted to cussing him out." (ECF No. 51-15 at 1).

Thus, Plaintiff's argument that he did not plead guilty to the charge of insolence to a staff member and was convicted based on "no evidence" is contradicted by the summary judgment record. The disciplinary charge form, two written staff incident reports, Plaintiff's major disciplinary appeal form, Plaintiff's deposition testimony, Plaintiff's statement in a grievance, and Defendant Faust's affidavit concerning her discussion with him all indicate Plaintiff engaged in a verbal altercation with Defendant Gentle. There is, therefore, "some evidence" that Plaintiff was guilty of at least one of the disciplinary charges, and his retaliation claim must fail as a matter of law.

### C. Disciplinary Charge – Due Process

Plaintiff alleges he did not receive due process in his disciplinary hearing. As a result, he was convicted of the disciplinary charges on "no evidence." This conviction caused him to lose class status, privileges, and 212 days of good-time credit. He seeks damages and the expungement of the disciplinary conviction from his record. As Plaintiff is clearly challenging the validity of his disciplinary conviction and its effect on the length of his sentence, his claims regarding that conviction are barred by the *Heck* doctrine. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. The Court noted that if a successful claim would not demonstrate the invalidity of an outstanding criminal judgment, it should be allowed to proceed.

The *Heck* doctrine applies to inmate disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641 (1997); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). An inmate challenge to the validity of a disciplinary conviction is barred by *Heck*. *Edwards,* 520 U.S. at 646-48. Any challenge to the effect of the disciplinary sanction on the award or revocation of good-time credit is also barred, as the credit will ultimately change the duration of the sentence served. *Id.* Thus, *Heck* requires favorable termination of the disciplinary charge "in an authorized state tribunal or a federal habeas court, even if the claim is for damages rather than earlier release." *Sheldon v. Hundley,* 83 231, 233 (8th Cir. 1996); *Cincoski v. Richard*, 418 Fed App'x 571, 571-72 (8th Cir. 2011) (Plaintiff's claims regarding his disciplinary convictions, including restoration of good- time credits, declaratory relief, and damages based on those convictions were *Heck*-barred.)

If the validity or the duration of the sentence is not implicated by the challenge, an inmate may bring a procedural due process challenge for prospective injunctive relief concerning the constitutionality of the prison disciplinary proceedings. *Muhammad v. Close*, 540 U.S. 749, (2004); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *see. e.g. Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (assuming the defendant had standing to do so, a claim for injunctive relief to enjoin defendants from conducting future hearings which lacked due process could survive for further review because "such relief would not call into question the underlying punishment").

Plaintiff has not alleged that his disciplinary conviction has been reversed, expunged, declared invalid, or called into question by a federal court. Without a favorable termination of the disciplinary conviction, Plaintiff's claims concerning its validity are barred by the *Heck* doctrine.

It does not appear that Plaintiff has alleged a procedural due process claim concerning future disciplinary hearings. The due process details of Plaintiff's current hearing were addressed by Defendants in their brief, however, so the Court will address this issue for the sake of

completeness. The Eighth Circuit has held that an inmate's disciplinary hearing "must offer the inmate an opportunity to explain his actions or otherwise defend himself before the disciplinary authority," but does not require a full "evidentiary battle." *Goff v. Dailey*, 991 F.3d 1437, 1442 (8th Cir. 1993). Under *Wolff,* "an inmate is entitled (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action." *Sanders v. Hobbs*, 773 F.3d 186, 191 (8th Cir. 2014).

There is no dispute as to the following facts. Plaintiff was served with the written notice of the disciplinary charges on January 14, 2018, by Corporal/Disciplinary Review Officer Campbell. (ECF No. 53 at SOF 22; 59 at SOF 22). Campbell asked Plaintiff if he wanted to request any witnesses, and Plaintiff asked for a witness statement from Corporal Butler. (ECF No. 53 at SOF 23-24; 59 at SOF 23-24). Campbell called Butler, who stated she did not have any knowledge about the incident. Campbell noted this response on the ADC Witness of Statement Form and included it in Plaintiff's disciplinary file. (ECF No. 53 at SOF 25-26; 59 at SOF 25-26). Plaintiff's disciplinary hearing was held on January 19, 2018, before disciplinary hearing officer Defendant Golden**.** (ECF No. 53 at SOF 27; 59 at SOF 27). Plaintiff was allowed the opportunity to provide a statement for the record at the hearing. (ECF No. 53 at SOF 27; 59 at SOF 27).

Defendant Golden provided an affidavit in support of this summary judgment motion stating that, in addition to Plaintiff's statement, he considered "the F-1 Report, the 005-from staff supporting the F-1 Report, and the F-1 statement from the charging officer." (ECF No. 51-8 at 2;53 at SOF 70). Plaintiff does not dispute that these documents were reviewed but argues that

the 005-from staff supporting the F1 report and the F-1 Report are both statements from Defendant Gentle. (ECF No. 59 at SOF 70). Plaintiff also argues that Defendant Golden was not fair and impartial because he ignored Plaintiff's statement and "just logged his own into my hearing action sheet." (ECF No. 59 at SOF 72). Plaintiff alleges the hearing recording will show how unfair Golden was. (*Id*.). Defendant Golden stated in his affidavit that his recording device malfunctioned the day of the hearing, so a recording of the hearing is not available for review. (ECF No. 51-8 at 2). A review of the disciplinary file shows it contains the disciplinary charge document (F-1) and two 005 reports. One of the 005 reports is from Defendant Gentle and one is from Corporal Butler. Both are dated January 10, 2018, and both 005 reports support the disciplinary charges. (ECF No. 51-2 at 5-7). There is also the Statement of Witness form signed by Campbell which indicates Butler said she had no knowledge of the event. (ECF No. 51-2 at 8).[2]

Plaintiff's hearing statement is listed on the disciplinary documentation: "I got served on the 9th so this disciplinary is out of date. If you watch on the cameras from 9 to 10:15 I was on my rack. The incident happened at 6:30 with Officer Gentle and Officer Butler." (ECF No. 51-2 at 2). Plaintiff filed a major disciplinary appeal the same day as his hearing. In his appeal he states:

> I believe my disciplinary should be reversed or modified on the grounds that the cameras in Housing 3 10 Brks will show on the date of the incident from 7:15-10:15 I was on my rack in 30 cell, so the 005 incident part saying I [illegible] @ 9:00pm is dismissive b/c it's physical evidence showing I wasn't there. As well as C/O Butler wrote a statement on my behalf indicating that I did not assault or threaten C/O gentle & @ no point was I outside my assignment Brks. My assumption is that he's referring to an incident at 6:30pm where he told me he'll bring me contraband after mail call & when I came to the door after mail call he said Fuck

---

[2] Butler's inconsistency is puzzling, but the record is clear that Campbell contacted Butler per Plaintiff's request. The Court also notes that Plaintiff repeatedly stated that Butler had provided a favorable witness statement for him, but the only statement in the record from Butler clearly supports Plaintiff's disciplinary conviction. (ECF No. 51-2 at 7).

you Jay Jones and I said Fuck you too & went to bed. Which they came to lock me up after 3-4 hours later (If C/O gentle felt like I was a threat, violent or aggressive at that they should have did it (lock me up) then not wait 3-4 hours.) Still I said nothing regarding physical harm which I'm requesting the black box.

(ECF No. 51-2 at 10.) The Court notes that in both statements, Plaintiff did not dispute that a verbal altercation between himself and Defendant Gentle occurred; he simply disputed the exact time of the altercation and the language used. Further, while Plaintiff's statement in his disciplinary appeal is certainly longer than the one listed on the disciplinary document, it does not appear that Golden changed any material fact in the statement; both statements reflect that Plaintiff argued he was not there and the videotape of the area would support his argument. The Court can therefore discern no evidence that Golden was unfair based on how he entered Plaintiff's statement on the disciplinary document. Based on Defendant Faust's affidavit, Plaintiff's Grievance OR-18-00120, and the security logs, the altercation did occur at approximately the time listed in the disciplinary documents. (ECF No. 51-10 at 2-3; 51-15; 55-1). Plaintiff does not dispute that his appeal was reviewed and affirmed by Warden Faust, Disciplinary Administrator Raymond Naylor, and ADC Director Wendy Kelley. (ECF No. 53 at SOF 73-75; 59 at SOF 73-75).

Finally, in his Response and his deposition, Plaintiff also argues that there was no investigation concerning the altercation because Golden and the others did not review video footage of the incident. He testified that he would have been satisfied if they had at least reviewed the camera or put him and Golden on the "black box"[3] to see who was telling the truth, rather than simply relying on the written reports. (ECF No. 51-1 at 30-32; 59 at 1).

Thus, even if Plaintiff's claims were not barred by the *Heck* doctrine, the summary judgment record indicates Plaintiff received the due process required by *Wolff* for his disciplinary conviction. He received written notice of the charges several days before his hearing. He was

---

[3] The Court will assume that the phrase "black box" refers to a polygraph test.

given the opportunity to make a statement in his defense at the disciplinary hearing. He was also permitted to request witnesses and to present evidence in his defense. He received a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary conviction. That Defendant Golden or the other ADC Defendants did not review all the evidence Plaintiff felt they should have does not rise to the level of a constitutional violation. This is particularly true considering a summary judgment record where Plaintiff repeatedly admitted that he engaged in a verbal altercation with Defendant Gentle. *See Hartsfield*, 511 F.3d at 831 ("disciplinary actions may be taken—and often they are—based *only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find a guard's report to be credible* and therefore take disciplinary action.") (emphasis in original); *Goff*, 991 F.3d at 1442 (an inmate's disciplinary hearing "must offer the inmate an opportunity to explain his actions or otherwise defend himself before the disciplinary authority," but does not require a full "evidentiary battle.").

Because Plaintiff's due process claim is barred by the *Heck* doctrine and because he received the due process required by *Wolff*, Defendants are entitled to summary judgment as a matter of law for Plaintiff's due process claim.

### D. Conditions of Confinement in Punitive Isolation

Plaintiff alleges his Eighth Amendment rights were violated by the conditions of confinement in punitive isolation. Specifically, Plaintiff alleges: (1) 24-hour isolation (2) constant cell illumination; (3) mat extraction for "obtuse hours;" (4) loss of the ability to shower; and (5) constant excessive noise ("banging on walls, vents or yelling and screaming for hours throughout the night"). (*Id.* at 7). Plaintiff alleges that the combination of these "liberty infringements" caused him to suffer sleep deprivation, anxiety, loss of appetite, hallucination, emotional disconnection, headaches, eye pain, and back and knee pain. (*Id.*).

13

Defendants argue he failed to exhaust his administrative remedies concerning his Eighth Amendment claims. In the alternative, they argue they are entitled to qualified immunity because (1) Plaintiff was only exposed to these conditions for twenty days; (2) Plaintiff was exposed only to a night light in the cell entry to permit staff to see into the cell; and (3) Plaintiff showered on nine days out of his twenty in isolation, missing only two shower opportunities. (ECF No. 52 at 32-33.

### 1. Exhaustion of Administrative Remedies

Plaintiff failed to exhaust his administrative remedies concerning his Eighth Amendment claims. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines." *Id.*

14

The Eighth Circuit Court of Appeals, however, has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute that Plaintiff filed only one grievance concerning the conditions of confinement in punitive isolation, dated January 25, 2018. (ECF No. 51-6 at 8; 53 at 19). This grievance was "not processed," and Defendants therefore argue he did not exhaust his administrative remedies on this issue. (ECF No. 51-6 at 8). A review of the January 25, 2018, grievance indicates Plaintiff submitted the Step One informal grievance on January 25, 2018, and the Step Two formal grievance on January 31, 2018. This grievance was stamped "RETURNED TO INMATE FOR THE FOLLOWING REASON(S): NOT PROCESSED, PREVIOUSLY ANSWERED/REJECTED, OR A DUPLICATE." A grievance identification number was not assigned. (ECF No. 51-3 at 1). Plaintiff filed an Inmate Request Form on February 7, 2018, stating he never received a response to his grievance, so he was proceeding to Step Three. (*Id*. at 2). The Request Form was also stamped "RETURNED TO INMATE FOR THE FOLLOWING REASON(S): NOT PROCESSED, PREVIOUSLY ANSWERED/REJECTED, OR A DUPLICATE." (ECF No. 51-3 at 1). Plaintiff had filed several other grievances concerning his disciplinary conviction, all of which were denied as ungrievable at the unit level, and he did not identify which grievance he was referencing on his Inmate Request Form. (ECF No. 53 at 17-19).

The stamp placed on Plaintiff's January 25, 2018, grievance form appears to have been an error by ADC staff. There is no dispute that Plaintiff only filed one grievance concerning his conditions of confinement in punitive isolation. It is therefore not possible that this grievance was a duplicate or had already been answered or refused. If Plaintiff had utilized the formal grievance form to note this error and proceed to Step Three, then he could have potentially either exhausted his grievance or qualified for an exception to the exhaustion requirement if ADC staff persisted in mistakenly rejecting the grievance as a duplicate. Plaintiff was aware of the appeal process, as he did precisely this in OR-18-00120 and OR-18-00022. (ECF No. 51-15, 51-16). Instead, Plaintiff filed an Inmate Request Form on February 7, 2018. (ECF No. 51-3 at 2). Nothing in the ADC grievance policy permits the substitution of an Inmate Request Form for the formal grievance forms in any part of the grievance process. (ECF No. 51-70 at 11).

Plaintiff failed to exhaust his administrative remedies regarding his Eighth Amendment conditions of confinement claims, and Defendants are entitled to summary judgment as a matter of law.

### 2. No Eighth Amendment Violation

Even if Plaintiff had exhausted his grievance concerning the conditions of confinement in punitive isolation or qualified for an exhaustion exception, his Eighth Amendment rights were not violated during the twenty days he spent in punitive isolation.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cty. of Sacramento v. Lewis,* 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges . . ." *Beaulieu v.*

*Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)).  The Eighth Amendment also prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities.  *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton,* 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *Revels v. Vincenz,* 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner."  *Revels,* 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety."  *Id*.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble,* 429 U.S. 97, 102 (1976).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).  As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation.  This injury must be greater than *de minimis*.  *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

All but one of Plaintiff's allegations fail to meet the objective first prong of the Eighth Amendment violation standard.

Plaintiff alleges he was kept in punitive isolation twenty-four hours a day for twenty days. (ECF No. 2 at 7).  "Punitive isolation or solitary confinement is not in itself cruel and unusual

punishment." *Ervin v. Ciccone*, 557 F.2d 1260, 1262 (8th Cir. 1977) (citing *Burns v. Swenson*, 430 F.2d 771, 777-78 (8th Cir. 1970)); *see e.g.*, *Phillips v. Norris,* 320 F.3d 844, 848 (8th Cir. 2003) (holding that an allegedly false disciplinary conviction that resulted in an inmate being required to spend thirty-seven days in punitive isolation did not rise to the level of an Eighth Amendment violation); *Brown v. Nix,* 33 F.3d 951, 955 (8th Cir.1994) (holding that placement in administrative segregation for nine years, as result of several disciplinary convictions, did not violate the Eighth Amendment). Further, "[a]n inmate who makes a due process challenge to his segregated confinement must make a threshold showing that the deprivation of which he complains imposed an 'atypical and significant hardship." *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (internal quotations omitted). The Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*." *Id.* (citing *Sandin v. Conner,* 515 U.S. 472 (1995)). Thirty days in punitive segregation is not an atypical or significant hardship. (*Id.*); *Kennedy v. Blankenship,* 100 F.3d 640, 642–43 (8th Cir.1996) (thirty days of punitive isolation instead of less-restrictive administrative segregation not atypical or significant hardship); *Burgess v. Hobbs*, 5:11CV00076 JMM/HDY, 2011 WL 1584316, at *2 (E.D. Ark. Apr. 12, 2011) (30 days of punitive time, 60 days of lost privileges, and a year in administrative segregation, are not atypical and significant hardship).

Plaintiff alleges he was subjected to constant illumination during his time in punitive isolation. (ECF No. 2 at 7). Defendant Faust provided an affidavit stating that full lighting is not left on in an inmate's cell in punitive isolation. During the lights out period, there is a night light that remains on in the cell entryway to allow staff to be able to see into the inmate's cell. (ECF No. 51-10 at 4). Plaintiff argues that it was a fluorescent light, not a night light. (ECF No. 6). Defendants have provided a legitimate penological reason for there to be some level of constant

illumination in the punitive isolation area; this, combined with the twenty-day period that Plaintiff was subjected to the illumination, does not rise to the level of a constitutional violation. *See e.g., Onstad v. Hobbs*, 607 Fed. App'x 595, 596 (8th Cir. 2015) (no violation when constant illumination of cells was for the limited period of four months and Defendants "proffered an explanation for why it was necessary.").

Plaintiff alleges the sleeping mat was removed from his cell for "obtuse hours." (ECF No. 2 at 7). In his grievance, Plaintiff indicated that the sleeping mat was removed "every morning from before 7am & I don't get it back till 9-10pm (sometime[s] later)." (ECF No. 51-3 at 1) Plaintiff does not allege that he was denied a sleeping mat overnight. He alleges only that he was denied a mat during daylight hours. The Court is not aware of any authority in this or any other Circuit which requires inmates without specific medical needs to be permitted access to a sleeping mat twenty-four hours a day. *See Vega-Sanchez v. McElroy*, Case No. 5:16-CV-05037, 2017 WL 3891668, *3 (W.D. Ark. Sept. 6, 2017) (denial of an all-day sleeping mat to an inmate with a broken rib was not a constitutional violation when the inmate was not prescribed an all-day mat or instructed to lie down during the day); *Burgess v. Hobbs*, Case No. 5:11CV00076 JMM/HDY, 2011 WL 1584316, *3 (E.D. Ark., Apr. 12, 2011) (removal of sleeping mat from 7 a.m. to 7 p.m. for the limited time period of thirty days was not an Eighth Amendment violation); *Pate v. Mathes*, 2:14-CV-150, 2014 WL 3784325, at *3 (E.D. Tenn. July 31, 2014) ("Here, plaintiff was furnished a mattress and blanket for sleeping purposes, and the Court has found no authority for the premise that a mattress and blanket must be furnished 24 hours a day, seven days a week, or that the Constitution precludes an inmate from sitting on a cold concrete slab. . .")

Plaintiff alleges he was denied the ability to shower during his time in punitive isolation. (ECF No. 2 at 7). Defendants provided a copy of the shower log under seal to the Court. (ECF

No. 20).  This log indicate Plaintiff showered on nine of the twenty days he was in punitive

isolation, missing shower opportunities only on January 12th and January 17th.  (ECF No. 51-10;

20).  The summary judgment record therefore indicates that Plaintiff was able to shower nine of

the twenty days he was in isolation.[4]  The Eighth Circuit has held that the denial of shower

privileges, for a short period of time, does not constitute an Eighth Amendment violation.  *See*

*Abernathy v. Perry,* 869 F.2d 1146, 1149 (8th Cir. 1989) (providing an inmate with only two

showers per week was not an Eighth Amendment violation); *Johnson v. Norris*, 2:08CV00052

JTR, 2008 WL 2952015, at *3 (E.D. Ark. July 29, 2008) ( no violation where Plaintiff was denied

a shower for only eight days); *Jones v. Houston,* Case No. 4:06CV03314, 2007 WL 3275125, *8

(D. Neb. Nov. 2, 2007) (denial of showering privileges for thirteen days was not an Eighth

Amendment violation); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("a two-week

suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'").

Plaintiff alleges there was constant excessive noise in the punitive isolation area, with

inmates banging on walls and vents and yelling and screaming throughout the night.  (ECF No. 2

at 7).  Exposure to loud and constant noise can constitute an Eighth Amendment violation.  *See*

*e.g., Keenan v. Hall,* 83 F.3d 1083, 1090 (9th Cir. 1996) (reversing summary judgment in favor of

official who subjected prisoner to constant screaming, wailing, crying, singing and yelling);

*Toussaint v. McCarthy,* 597 F.Supp. 1388, 1397 (N.D.Cal. 1984) ("[P]ublic conceptions of

decency inherent in the Eighth Amendment require that [inmates] be housed in an environment

that, if not quiet, is at least free of excess noise"), *rev'd in part on other grounds,* 801 F.2d 1080,

1110 (9th Cir.1986).  Noise is considered extreme when it is harmful to the health and well being

of inmates and inflicts pain without penological justification. *Id.; see also Lunsford v. Bennett,* 17

---

[4] The log indicates Plaintiff received a shower on January 10th, 15th, 19th, 22nd, 24th, 26th, 29th, 31st, and
February 2nd.  (ECF No. 51-10; 20).

F.3d 1574, 1580 (7th Cir. 1994) ("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare.").  The cumulative effect of sleep deprivation caused by excessive noise can support an Eighth Amendment claim.  *Gardner v. Andrews*, Case No. 5:15-CV-00231 JM-PSH, 2018 WL 2307011, *3 (E.D. Ark. Apr. 26, 2018); *see also Givens v. Jones*, 900 F.2d 1229 (8th Cir. 1990), *Garrett v. Thaler*, 560 Fed. App'x 375, 378 (5th Cir. 2014); *Keenan*, 83 F.2d at 1090; *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996).

Defendants did not provide any summary judgment evidence to contradict Plaintiff's allegations concerning the noise level in the punitive isolation area.  Plaintiff's allegations therefore meet the objective first prong of the Eighth Amendment violation standard.[5]

Plaintiff's allegations, however, do not meet the second, subjective prong of the standard. Other than Plaintiff's unprocessed January 25, 2018, grievance, which was filed on day seventeen of his twenty-day sentence in punitive isolation, there is no summary judgment evidence which indicates that he made anyone aware that he was suffering from an excessive noise or sleep deprivation issue.  Plaintiff does not allege that he informed staff that the noise was excessive, that he was having trouble sleeping, or that he asked them for earplugs.  Nor does he allege that he sought medical help for his insomnia.  There is therefore no summary judgment evidence that Defendants were substantially aware of but disregarded an excessive risk to Plaintiff's health or safety.  *See e.g.*, *Givens*, 900 F.2d at 1234 (prison staff entitled to qualified immunity due in part to the fact that no prisoner affected by the noise filed a grievance about it); *Garrett*, 560 Fed App'x at 379-80 (inmate's allegations about noise-related sleep deprivation sufficient to survive a motion

---

[5] This determination is for the purpose of this summary judgment analysis only.

to dismiss when earplugs did not help, he complained repeatedly to prison medical staff, and prison officials were aware of the issue but refused to make any changes).

Finally, Plaintiff failed to provide any objective medical evidence that he suffered any non-*de minimis* physical injury as a result of any of the alleged conditions of confinement in punitive isolation.

Defendants are therefore entitled to summary judgment as a matter of law as to Plaintiff's Eighth Amendment conditions of confinement claims.

## IV.  CONCLUSION

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 51) be GRANTED and Plaintiff's claims be DISMISSED WITH PREJUDICE.  I further recommend that Plaintiff's Motion to Compel (ECF No. 46), Motion for Address Assistance and a Walk-Through of ORCU (ECF No. 61), and Motion for Summary Judgment (ECF No. 62) be DENIED.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 25th day of July 2019.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE